**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JACOB ASH HOLDINGS, INC.,<br>a Michigan Corporation, | ) )<br>) | C.A. No. _____ |
| Plaintiff, | ) )<br>) | |
| v. | ) )<br>) | |
| WINTER CONCEPTS, INC.,<br>a California Corporation | ) )<br>) | |
| Defendant. | ) | |

## VERIFIED COMPLAINT

### PARTIES

1.     Plaintiff Jacob Ash Holdings, Inc. ("Jacob Ash") is a Michigan corporation with a principal place of business located at 301 Munson Avenue, McKees Rock, Pennsylvania 15136.

2.     Defendant Winter Concepts, Inc. ("Winter Concepts") is a California corporation with a principal place of business located at 110 E. 9th Street, #C402, Los Angeles, California 90079.

### JURISDICTION AND VENUE

3.     The parties are of diverse citizenship and the amount in controversy exceeds $75,000, exclusive of interest and costs.  Jurisdiction thus exists pursuant to 28 U.S.C. § 1332.

4.     Venue is proper in the Western District of Pennsylvania pursuant to 28 U.S.C. § 1391 as a substantial part of the events giving rise to the claim occurred therein.

### BACKGROUND FACTS

5.     Jacob Ash is a clothing manufacturer which has operated in the Pittsburgh area for more than eighty years.  Its primary product lines are hats and gloves.

6.     On April 14, 2009, Jacob Ash entered into an Exclusive Manufacturing and Distribution Agreement (the "Agreement") with Winter Concepts for the production and sale of a certain "Ed Hardy™" line of ski/winter hats and gloves.  A true and correct copy of the Agreement is attached to this Complaint as Exhibit A.

7.     Winter Concepts represented to Jacob Ash that it had the "right, power and authority" to enter into the Agreement as it possessed exclusive rights and privileges to the intellectual property rights associated with the "Ed Hardy™" line of apparel pursuant to a license agreement issued to it by the primary licensee, Nervous Tattoo, Inc.  See Recitals to Agreement and ¶ 6(a) and 6(f).

8.     In consideration for being selected as the exclusive manufacturer and distributor of these Ed Hardy™ hats and gloves, Jacob Ash paid an up-front fee of $100,000.00 to Winter Concepts.

9.     Pursuant to Paragraph 6(f) and (g) of the Agreement, Winter Concepts agreed to timely provide notice to Jacob Ash of any amendments or modifications to its licensing agreement, and to promptly notify Jacob Ash of any condition which might somehow adversely affect the manufacturing and distribution rights of Jacob Ash under the Agreement.  Moreover, Winter Concepts specifically covenanted to not create any condition which would adversely affect the rights of Jacob Ash under the Agreement.

10.     As part and parcel of its performance under the Agreement, Jacob Ash manufactured gloves and hats ordered by Winter Concepts itself, and delivered the products to certain customers designated by Winter Concepts.  Winter Concepts was to pay Jacob Ash for such product, and would itself bill and collect from the customers it had so designated.

11.     In the final months of 2009, and only a few months into the Agreement, Winter Concepts became seriously in arrears for product it had purchased and had directed Jacob Ash to deliver to designated customers. As of the date of this Complaint, Winter Concepts is indebted to Jacob Ash in the amount of $670,987.68. Attached hereto as Exhibit B is a chart showing the unpaid charges for the goods manufactured and produced by Jacob Ash and the designated "ship-to" recipient for customers who were to receive the goods at Winter Concept's direction.

12.     Jacob Ash repeatedly attempted to contact officers and agents of Winter Concepts, specifically Farhand Neidari and Ramtin Nosrati, regarding this indebtedness to no avail. During the first week of 2010, Jacob Ash learned that Winter Concepts had without notice closed its Los Angeles office. Jacob Ash then was further advised by Winter Concepts that its license regarding Ed Hardy products had been terminated by Nervous Tattoo. While officers for Winter Concepts have advised that the closing of Winter Concept's office should be of no concern, no further information has been provided and no payment of any of the amounts owed has been made.

13.     At no time prior to January of 2010 did Winter Concepts advise Jacob Ash that its license regarding Ed Hardy products was modified, suspended or terminated or that Jacob Ash's rights under the Agreement were in any way affected or in jeopardy. However, Jacob Ash has subsequently learned that the termination may have occurred as early as September of 2009.

## COUNT I

### Breach of Contract

14.     The averments contained in paragraphs 1 through 13 above are hereby incorporated by reference.

15.     Winter Concepts has breached the Agreement by failing to make payment to Jacob Ash for product it manufactured and delivered to customers at Winter Concept's direction in the amount of $670,987.68.

16.     Pursuant to the express terms of Paragraph 24 of the Agreement, Jacob Ash is entitled to recover all costs, expenses and reasonable attorney fees incurred in connection with this action.

WHEREFORE, Jacob Ash demands judgment in its favor and against Winter Concepts, Inc., in the amount of $670,987.68 together with all costs, expenses and attorney fees.

## COUNT II

### Breach of Contract

17.     The averments contained in paragraphs 1 through 16 above are hereby incorporated by reference.

18.     Jacob Ash has been advised by a sales representative of Winter Concepts that Winter Concept's rights regarding the Ed Hardy products were terminated by Nervous Tattoo in early November of 2009.  It is believed however, and therefore averred, that said license may have been terminated on September 30, 2009.

19.     In breach of the express terms of the Agreement, Winter Concepts provided no notification whatsoever of any such termination to Jacob Ash, and took no steps whatsoever to advise Jacob Ash that its rights under the Agreement may have been adversely affected until January of 2010.  Indeed, in November of 2009, when questioned by representatives of Jacob Ash, Winter Concepts advised only that Nervous Tattoo did not want sales made to kiosk operators, but that Jacob Ash would in no way be impacted by this in 2010 and could continue to fully perform under the Agreement.

20.    As no notice was provided to Jacob Ash, it continued to manufacture, sell and deliver products for which it has not been paid and has suffered further and additional damages as a result of this breach.

WHEREFORE, Jacob Ash demands judgment in its favor and against Winter Concepts, Inc. in an amount in excess of $75,000, along with all costs, expenses and attorney fees.

## COUNT III

### Breach of Contract

21.    The averments contained in paragraphs 1 through 20 above are hereby incorporated by reference.

22.    Jacob Ash paid an up front fee of $100,000 in order to secure the exclusive right to manufacture and distribute certain Ed Hardy products throughout the term of the Agreement, but Winter Concepts provided such rights for a period of only a few months before closing its office without notice.

23.    Jacob Ash incurred substantial expenses and costs in preparing to manufacture the products at issue, and is damaged as a result of Winter Concept's failure to assure, as it was contractually obliged to do, that no condition would exist which could adversely affect Jacob Ash's rights under the Agreement.

WHEREFORE, Jacob Ash demands judgment in its favor and against Winter Concepts, Inc. in an amount in excess of $75,000, along with all costs, expenses and attorney fees.

## COUNT IV

### Imposition of Constructive Trust

24.    The averments contained in paragraphs 1 through 23 are hereby incorporated by reference.

25.     Solely at its own expense and cost and effort, Jacob Ash delivered to customers designated by Winter Concepts Ed Hardy product that it had manufactured pursuant to the Agreement.

26.     Winter Concepts has advised Jacob Ash that it has not yet been paid by those customers for the product manufactured and delivered by Jacob Ash.

27.     Winter Concepts would be unjustly enriched were it permitted to issue and collect invoices issued to such customers for its own account when the entire cost of manufacturing and delivery has been incurred by Jacob Ash who has not been paid by Winter Concepts.

28.     In addition, the failure of Winter Concepts to take any steps whatsoever to notify Jacob Ash that its rights under the Agreement could be adversely affected further justifies the imposition of a constructive trust.

29.     It is believed, and therefore averred, that certain customers designated by Winter Concepts for delivery of products have cancelled their order, and that products manufactured by Jacob Ash at its sole expense are being warehoused by Winter Concepts.  Winter Concepts has not paid for said products.

30.     Winter Concepts would be unjustly enriched were it permitted to retain such products without payment as all costs of manufacturing and delivery were incurred by Jacob Ash.

31.     A constructive trust should be imposed, both preliminarily and permanently, on all receivables possessed by Winter Concepts for all product manufactured and delivered by Jacob Ash as specified in Exhibit B to this Complaint, and upon all products manufactured and delivered by Jacob Ash but currently warehoused.

WHEREFORE, Jacob Ash requests this Court to enter an Order, both preliminarily and permanently, imposing a constructive trust on all receivables of Winter Concepts arising from Ed Hardy products manufactured and delivered by Jacob Ash and directing Winter Concepts to serve as trustee in invoicing and collecting said receivables solely for the benefit of Jacob Ash. In addition, the Order should impose a constructive trust on all products currently warehoused by Winter Concepts.

A JURY TRIAL IS HEREBY DEMANDED.


Date:   January 15, 2010                          Respectfully submitted,

                                                  METZ LEWIS LLC

                                                  By: /s/ Steven Petrikis, Esq.
                                                      John W. Lewis, II, Esq.
                                                      Pa. I.D. No. 39712
                                                      Steven Petrikis, Esq.
                                                      Pa. I.D. No. 34426

                                                      11 Stanwix Street; 18th Floor
                                                      Pittsburgh, PA  15222

                                                      Phone:  (412) 918-1100
                                                      Fax:  (412) 918-1199

                                                      E-mail:  jlewis@metzlewis.com
                                                               spetrikis@metzlewis.com

                                                      Counsel for Plaintiff

## **VERIFICATION**

I hereby verify that the facts set forth in the foregoing Complaint are true and correct to the best of my knowledge, information and belief.  I understand that false statements herein are made subject to the penalties of 18 Pa. C.S.A. § 4904 relating to unsworn falsification to authorities.

_1-14-10_
Date

Frank Smith
President of Jacob Ash Holdings, Inc.